Good morning, your honors. My name is Jose Saldivar. I represent Mr. Paul Gonzalez-Avalos Council. I would like to begin, your honors, with moving to strike a document that was disclosed yesterday as well. He filed yesterday and the motion by the government was for you to consider it in rendering a decision in this case. Given that there were deadlines in this case, I would ask that this court not consider this in rendering a decision in this case. So the issues are quite simple in this case, and that is whether or not Mr. Gonzalez-Avalos was able to prove by preponderance of the evidence that he is eligible for safety bail relief, and also the other issue would be whether the government's proffer alone without any evidence after my client having presented evidence of sentencing, would that be enough to discredit him and find him ineligible for the safety bail relief. Since my client pled guilty back in November 30, 2016, at that moment he had made aware of the court and the government that he was seeking safety bail eligibility. In fact, the government in that hearing said that my client was ineligible for safety bail relief. However, nothing was documented, nothing was prepared for sentencing purposes for the Honorable Vasquez to determine at what point was my client not being truthful to the government. That's the issue. When I came on the case, I joined Judge Vasquez's sentiments in that I had no idea what the government was trying to prove at that time at sentencing that my client wasn't being truthful to the government during the debriefing. There was no debriefing made, and my client did present evidence at sentencing. He also presented testimony by Mr. Gallardo Cota, and he also submitted a sentencing memorandum, and the government was required to then present evidence, which they chose not to, even though they had an agent there at sentencing. The only thing that the government offered at the time were their proffers. The Honorable Vasquez also said during sentencing, when there was some kind of side conference with the Attorney King representing Gallardo Cota, that she stated that the government doesn't grant safety bail relief because there's also an issue with credibility of the defendant. And that is why I raised that issue in my brief, that I believe what was said during the sentencing by Judge Vasquez. It appears that she was shifting the burden to the government in determining whether or not my client was truthful or not. There was no finding whatsoever during sentencing as to where exactly my client was untruthful to the government. The only thing that Honorable Vasquez said during sentencing over and over again was that there was some kind of disagreement between what the government believes the facts are and also what Mr. Gonzales Avalos testified to. I'm getting a little confused by your argument. Do you agree that the burden is on you and your client to prove that you're entitled to the safety bail? That's correct. Now, at what point in the record am I going to find the evidence that proves that you're entitled to a safety bail relief on the basis of this record? On the record, well, the letter provided to the court, well, provided to the court by Mr. Gonzales Avalos' attorney, authored by Gallardo Cota, that recanted a statement made that were shown in the pre-sentence report. Those were the issues that were the issues with his truthfulness. Are those not subject to the district court's credibility finding or determining credibility in regards to those? Yes, and the judge and the Honorable Vasquez did not say that she did not find Mr. Gonzales Avalos as not being credible. She only stated during sentencing that there was a dispute, and that's why Mr. Gonzales Avalos did not get the safety bail. Well, if the evidence only rises to the fact that there's a dispute, then you must be arguing that if there's a dispute, then you win because? Because Mr. Gonzales Avalos presented evidence unlike the government in this case, which they're required to do once there's evidence presented by the defendant in this case that he's eligible for safety bail relief. Now, how does – and this will help me out – how does the fact that the request was made for the trial court to make a determination based upon evidence that he had presented there, and the government not stepping up and calling dirt, and the trial court obliged, as I read. Now, maybe you might be able to shed light on that. I'm sorry, I'm not – Well, as I understood, what we have before us is that once you presented, or the evidence that was presented, claiming that this was the proof that you needed to show you were entitled to the safety bail, that at that point in time, counsel for the defendant asked the trial court to make the decision based upon that evidence. Yes, and that goes to the government's argument of invited error as far as stating in their reply brief that Mr. Encinias was the actual individual who halted the evidentiary hearing, but that's inaccurate. What Mr. Encinias said was that he was not going to offer any more testimony, and that he would ask the court to rule based on the testimony that has been presented, but at no time did he inform the court, stop the evidentiary hearing, or don't allow the government's agent to testify to contradict Mr. Gonzalez-Avalos' testimony. So, on the basis of what we have before us, if we agreed with you, would it not seem more reasonable to remand to the district court to determine whether or not she actually found the credibility of the recanting? Because that, to me, seems to be – if she had actually said, I find that that evidence is not credible, you lose. That's correct. All right. And I have nothing further. Thank you. Counsel, while I'm on a roll, let me ask you, would that not seem, in this instance, if the question is the credibility of the recanting testimony and the trial court did not make a specific – you could infer that that probably is what she did, but she didn't say that, of just remanding and say, did you determine that this was not credible, at which time your opposing counsel says he would lose. May it please the court? Please. Introduce yourself. Counsel, my name is Paul Mishlevietz, and I have the honor of representing the United States in this matter. There are many ways that the defendant loses here. If Judge Vasquez had explicitly said, I do not find this recantation credible, that is one way. If Judge Vasquez noted that the direct testimony of Mr. Gonzalez-Avalos does not establish the elements of the offense because he said he had no idea that Gallardo Cota was going to be in town, had not communicated with Gallardo Cota, didn't know why Gallardo Cota was there, he couldn't possibly have joined in the conspiracy to have Gallardo Cota bring drugs to Albuquerque to distribute them there, knowing of its basic premise. He couldn't have been guilty of the crime if the testimony that he gave under oath on the day of the sentencing hearing was truthful and complete. So Judge Vasquez could have pointed out more specifically how Mr. Gonzalez-Avalos was obviously lying to her face on the stand, and it's true that she did not, but it's also true that she has no obligation to. The Supreme Court ruled in regards to the evidence that she has in front of us, and I'm wondering why, I don't know if you were trial counsel below, but why you didn't go ahead and put on your agents that were there. So I think what you can read, Your Honor, is in the record of this hearing, Judge Vasquez was very reasonably concerned that there were defendants in a Mexican drug cartel affiliated drug deal on the stand in the open court in an unsealed hearing being asked by me, because it was indeed me below, in Santa Fe just a few blocks away, who is asking them, in the case of Gallardo Cota, Gallardo Cota told the police when he was arrested, I was there to deliver the drugs to Gonzalez-Avalos, I was communicating him for the week leading up to the trip, when he thought that Ms. Levia Valencia's car had been made or had been compromised, caught by the police, I didn't know what to do, I was nervous, so I got in touch with Gonzalez-Avalos, he is the one who was driving the car in which the three of them, Gallardo Cota, Melendrez Armenta, driven by Gonzalez-Avalos, drove to the parking lot across the street from the MGM Elegante Hotel on Manal Boulevard in Albuquerque, and was observing for about ten minutes what was now a bait car, observing it from across the street at the gas station without pumping gas, agents, Special Agent Joe Harrison of HSI foremost among them, noticed that car, suspiciously parked across the street at the gas station, directed one of the task force officers to pull that car over, that's how these three guys got caught. So, Gallardo Cota then writes this letter, without informing his lawyer ahead of time that he is going to do that, sends the letter to a family member of Gonzalez-Avalos and says, Gonzalez-Avalos had nothing to do with it, he didn't know anything about any drugs, I just asked him for a ride, he just gave me a ride, subtext being, I have definitely not ratted out anybody to the feds, please don't think I have ratted anybody out to the feds. His motivation for sending that letter, very clear, its believability, zero. And so he gets on the stand, Gallardo Cota, and Gallardo Cota on direct examination says, consistent with the letter, I had no prior communication with Gonzalez-Avalos before I got to Albuquerque, as far as I know he had no idea who the drugs were, he wasn't the one to whom I was going to deliver the drugs. So I ask him, so who were you going to deliver the drugs to? I don't know. Did you send this letter that says Gonzalez-Avalos didn't have any prior involvement with the planning? Yes. How did you get the address to which to send this letter to Gonzalez-Avalos' family members, who then gave it to Leon Insinius, who was defense counsel at the trial level? I don't know. Then I ask him, you said to the police that usually Paul Gonzalez-Avalos drives to Arizona to pick up the drugs himself, that he then drives back to Albuquerque, and this was the first time, this drug deal that this case is about, was the first time that you were delivering the drugs to Gonzalez-Avalos? He said yes. And I said, was this the first time that you were delivering to Paul Gonzalez-Avalos? Yes. Then the court inquires, and the court says, was Paul Gonzalez-Avalos the person to whom you were going to deliver these drugs? Answer no. So she goes to move to the next witness, the district court does, and I said, district court, may I please cross-examine based on your inquiry? And district court said essentially, and you can read the transcript, but paraphrasing, the district court said, but he answered my questions and he said that he wasn't delivering to Paul Gonzalez-Avalos. And I said, yes, Your Honor, but that's the opposite of what he told me when he answered my question by saying this was the first time he was to deliver to Paul Gonzalez-Avalos. I didn't get the chance to finish that cross-examination, but that's okay. The district court had that before it when it necessarily made credibility findings to be able to say later on in the hearing, after hearing the testimony from a Don Guy or Dakota that Paul Gonzalez-Avalos didn't know anything about anything, and after hearing from Paul Gonzalez-Avalos that he didn't know anything about anything, that she then found the facts as set forth in the PSR to be true. And the facts as set forth in the PSR were that Paul Gonzalez-Avalos was to take delivery of these drugs, and that was his involvement, his knowing and voluntary involvement in this conspiracy, and that's why he's guilty rather than not guilty. But if you look at my cross-examination of Paul Gonzalez-Avalos, specifically you'll find it in Volume 1 of Appellant's Appendix, page 86. The defendant, Paul Gonzalez-Avalos, says he did not know why Guy or Dakota was in town, and he had not had previous communication with Guy or Dakota about Guy or Dakota's reason for being in town. And because Guy or Dakota's reason for being in town was to deliver these drugs to him, Paul Gonzalez-Avalos, if it were true, hypothetically, that Paul Gonzalez-Avalos just answered the phone when he was unexpectedly called and he was unexpectedly asked to give someone a ride, and he, because he's a helpful person, gave them a ride, he would not be guilty of having knowingly and voluntarily joined and conspired and taken action further into this conspiracy to have these drugs delivered to Albert Hercule from Phoenix, Arizona. So the question, the standard, is whether the finding by the district court that the defendant had not met his burden to prove safety valve eligibility by demonstrating true and complete debriefing is supported by the record. The answer is that it is very substantially supported by the record. There is no reason to credit Guy or Dakota's explicit statements that contradict each other as somehow being exculpatory to Mr. Gonzalez-Avalos, and Mr. Gonzalez-Avalos' answers to my question that he didn't know why Guy or Dakota was in town and didn't even know who Melendrez-Armenta was are inconsistent with guilt. They can't be a true and complete debriefing of his personal knowing and voluntary involvement in the drug conspiracy. So what I think you're saying is that we could affirm without addressing whether it was appropriate or not or necessary or not to validate or not validate Guy or Dakota's recantation. There is definitely no rule requiring Judge Vasquez to make explicit credibility findings as to each witness. Could we just look at what the evidence was about what this defendant said at the briefing compared to what he pled to in the indictment and say that he, just on that alone, not considering one way or the other this recantation, or just look at those two things, we could say that that briefing was a woefully inadequate disclosure of his knowledge. Yes. And affirm. Yes. So we don't need to get to the recantation at all. No, sir. The court could address any of these things, and I've tried to be thorough in briefing them, just in case the court had further inquiries, but if the question is what's the simplest way to affirm, it is to note that the statements made under oath at the sentencing hearing in Gonzalez-Avalos' direct examination alone, even if you discount any value that I brought with my cross-examination, do not meet the standard to establish the elements of the crime to which he pled. And I have more, but unless the court should have any questions, I am willing to leave it there. Thank you. Apparently not. Thank you. Your Honors, the Mr. Gonzalez-Avalos at no time said that he was not guilty of what he pled guilty to in the indictment. He actually, during the sentencing, during cross-examination, or actually during direct, he was asked whether Mr. Gallardo asked him to help him with the situation, and he responded in the affirmative. The indictment talks about a conspiracy, but what my client did not agree to was that he had knowledge of the conspiracy that originated from Arizona to New Mexico. He can still be found guilty in a factual basis, be established in New Mexico, when he gets a call to get help about this issue with the car and the drugs. He's equally guilty just as how the indictment is read. And as far as looking over what Judge Vasquez said, as far as the determination of credibility, of truthfulness, providing the government with all the information that my client has, and again, she says, the Honorable Vasquez said that it was unfair for her in terms of preparing for defense, in terms of preparing their client and to allow her to make a kind of truthfulness assessment. Therefore, in this case, the court is not being able to find Mr. Gonzalez meets a safety valve. But at no time, again, does she say that she did not believe my client's testimony, or the co-defendant in this case. She just acknowledged that there was a dispute, and that is all. Thank you. Thank you. All right, it appears that we are at an end. Thank you both for your arguments. The case stands submitted.